IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03276-MSK-KLM

GRACE RANDAZZO, an individual,

    Plaintiff,

v.

CH2M HILL, INC., a Florida corporation,
CH2M HILL COMPANIES, LTD., a Delaware corporation, and
DUDLEY WRIGHT, an individual,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [#15][1] (the "Motion"). Plaintiff filed a Response [#19] in opposition to the Motion, and Defendants filed a Reply [#23]. Pursuant to 28 U.S. C. § 636(b) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to the undersigned for a recommendation regarding disposition. The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, it is respectfully **RECOMMENDED** that the Motion [#15] be **GRANTED**.

### I. Background

In short, the Complaint [#1] alleges that this lawsuit arises from Plaintiff's former

---

[1] "[#15]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). This convention is used throughout the Recommendation.

employment with the CH2M Hill Defendants.  At the time of her discharge, Plaintiff was Lead Paralegal, Litigation Paralegal, and Litigation Support Manager for Defendant CH2M HILL, Inc. ("INC") and Defendant CH2M HILL Companies, Ltd. ("LTD") (collectively, the "Company").  *Compl.* [#1] ¶ 1.  LTD is the parent of all CH2M HILL subsidiaries and affiliates.  *Id.* ¶ 11.  Its business consists of consulting, design, design-build, operations and program management worldwide, with the majority of its clients comprised of local, state, and federal government agencies.  *Id.*  Defendant Dudley Wright ("Wright") was Plaintiff's boss and immediate supervisor.  *Id.* ¶ 13.

Plaintiff worked for INC/LTD in its Denver office for nine-and-a-half years, from April 2002 until October 17, 2011.  *Id.* ¶ 2.  For the first nine years of her employment, Plaintiff asserts that everything went very well for her with the company, in that she received pay raises, promotions, and increased responsibility for highly sensitive and high risk litigation matters.  *Id.* ¶ 3.  This ascension ended in June 2011 when Plaintiff refused to comply with Defendant Wright's alleged directive to withhold information and hide documents that implicated the Company in a multi-million dollar scheme to defraud the federal government.  *Id.* ¶ 4.  Plaintiff was thereafter stripped of her responsibilities for highly sensitive and high risk litigation matters.  *Id.* ¶ 5.  When she later attempted to take leave under the Family Medical Leave Act ("FMLA") to care for her dying mother and her own medical needs, she alleges she was "misdirected" by Defendant Wright.  *Id.*  Ultimately, on October 17, 2011, Plaintiff was terminated for "poor performance."  *Id.* ¶ 6.  In terminating Plaintiff's employment, the Company asserted both that Plaintiff had "poor performance" and that the

Company could no longer "trust" Plaintiff.[2]  *Id.*

Plaintiff asserts five causes of action:[3] (1) unlawful retaliation in violation of the Federal False Claims Act ("FCA") (Claim One); (2) wrongful discharge in violation of public policy (Claim Two); (3) illegal interference with Plaintiff's rights under the Family Medical Leave Act ("FMLA") (Claim Three), 29 U.S.C. § 2615(a)(1); (4) retaliation in violation of the FMLA, 29 U.S.C. § 2615(a)(2) (Claim Four); and (5) intentional infliction of emotional distress ("IIED"), against Defendant Wright (Claim Eight).  *Id.* ¶¶ 149-216.  Defendants contend that all of Plaintiff's claims should be dismissed.  *See Motion* [#15] at 1.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of*

---

[2]  Plaintiff's Complaint is clearly written and well-detailed and will not be further outlined here.  Additional allegations are provided in this Recommendation in conjunction with the analysis of Plaintiff's claims below.

[3]  On July 21, 2014, Plaintiff filed a Stipulation to Dismiss Plaintiff's Age and Gender-Based Retaliation Claims With Prejudice [#45], which stipulated to the dismissal of Claims Five, Six, and Seven from the Complaint [#1]: (5) illegal retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e; (6) illegal retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.; and (7) illegal retaliation in violation of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-402.  Accordingly, the portions of Defendants' Motion regarding these causes of action are moot.

*Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

### III. Analysis

The Court must address three preliminary matters before examining the specifics of Plaintiff's claims. First, Defendants object to Plaintiff's Response because they assert that it does not comply with MSK Civ. Practice Standard V.I.2.c.2. *Reply* [#23] at 1 n.1. That Practice Standard provides:

> The respondent should utilize the same format for each challenged claim. If the respondent disputes that a particular element must be alleged, the element should be identified as disputed and addressed in an accompanying brief. If the respondent contends that a proper and sufficient factual allegation has been made in the complaint, the respondent should specifically identify the page and paragraph containing the required factual allegation.

The language used in this portion of the Chief Judge's Practice Standards is permissive,

not mandatory. The Chief Judge further states in the introduction to this section: "Using these procedures will help to expedite determination. Failure to use these formats may result in a delay in their determination. The following formats for motions and responses should be used . . . ." *MSK Civ. Practice Standard V.I.* This language is again permissive, and not mandatory, regarding the format of a response to a motion to dismiss under Fed. R. Civ. P. 12(b). Accordingly, the Court will not strike the Response, and Defendants' objection is overruled.

Second, as Defendants discuss, there is no indication in the Complaint that Plaintiff asserts any claim against Defendant Wright except a claim for IIED. *See Reply* [#23] at 3. The IIED claim is the only one of Plaintiff's causes of action that is affirmatively asserted against Defendant Wright. Further, Plaintiff appears to make no argument directed at any personal liability of Defendant Wright for the other remaining claims, which generally cannot be asserted against individuals anyway. *See Lipka v. Advantage Health Grp., Inc.*, No. 13-CV-2223, 2013 WL 5304013, at *12 (D. Kan. Sept. 20, 2013) (FCA); *Saavedra v. Lowe's Home Centers, Inc.*, 748 F. Supp. 2d 1273, 1290-91 (D.N.M. 2010) (wrongful discharge); *Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169 (D. Kan. 2006) (FMLA). Accordingly, the Court construes the Complaint as seeking relief from Defendant Wright only on the IIED claim and as seeking relief from Defendants INC and LTD on the other remaining claims.

Third, Defendants argue that Plaintiff does not allege an employment relationship directly with Defendant LTD, only that LTD is the parent company of Defendant INC. *Motion* [#16] at 1 n.1. Defendants assert that the claims against LTD must therefore be dismissed. *Id.* (citing *Aludo v. Denver Area Council*, No. 06-cv-02257-LTB-MJW, 2008 WL

3166147, at *5 (D. Colo. Aug. 5, 2008); *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987); *U.S. ex rel. Fent v. L-3 Commc'ns Aero Tech LLC.*, No. 05-CV-0265-CVE-SAJ, 2007 WL 3485395, at *3-4 (N.D. Okla. Nov. 8, 2007); *Thompson v. Quorum Health Res., LLC*, No. 1:06-CV-168-R, 2007 WL 2815972, at *2 (W.D. Ky. Sept. 27, 2007)). However, the Complaint directly contradicts this argument. *See, e.g.*, [#1] ¶ 1 (stating that this case arose from Plaintiff's former employment by Defendants), ¶ 2 (stating that Plaintiff worked for INC and LTD in its Denver office from 2002 to 2011), ¶ 12 (stating that Plaintiff was Lead Paralegal/Litigation Paralegal/Litigation Support Manager for INC and LTD at the time of her termination), ¶ 23 (stating that Plaintiff worked for INC and LTD for ten years). These allegations are sufficient at this stage of the case to assert an employment relationship directly with both INC and LTD.

**A.     Retaliation in Violation of the FCA**

Plaintiff claims that Defendant Wright terminated her because she attempted to further a federal FCA case. She further asserts that her termination was illegal retaliation under the whistleblower provisions of the FCA. *Compl.* [#1] ¶¶ 149-59. Defendants argue that Plaintiff fails to state a claim for illegal retaliation in violation of the FCA. *Motion* [#16] at 7-14; *Reply* [#23] at 4-11.

In part, the FCA forbids a person from "knowingly present[ing], or caus[ing] to be presented, [to an officer or employee of the United State Government] a false or fraudulent claim for payment or approval," "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim," "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly

conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government," or "conspir[ing] to commit" one of these violations. 31 U.S.C. § 3729(a)(1)(A)-(C), (G).

"Since employees will often be in the best position to report frauds perpetrated by their employers, the FCA includes 'whistleblower' provisions protecting employees who do so from retaliation." *McBride v. Peak Wellness Center, Inc.*, 688 F.3d 698, 703 (10th Cir. 2012). A fired whistleblower who is the subject of retaliation may be entitled to job/position reinstatement, double back pay, litigation costs, and attorneys' fees. 31 U.S.C. § 3730. To qualify for such protection, "the activity prompting plaintiff's discharge must have been taken in furtherance of an FCA enforcement action." *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996) (internal quotation marks omitted). The plaintiff "has the burden of pleading facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private qui tam action or assisting in an FCA action brought by the government." *Id.* "Notice may be provided in a number of ways: for example, by informing the employer of 'illegal activities' that would constitute fraud on the United States; by warning the employer of regulatory noncompliance and false reporting of information to a government agency; or by explicitly informing the employer of an FCA violation." *McBride*, 688 F.3d at 704 (internal citations omitted). "But merely informing the employer of regulatory violations, without more, does not provide sufficient notice, because doing so gives the employer 'no suggestion that [the plaintiff is] going to report such noncompliance to government officials' or bring 'her own qui tam action.'" *Id.* (quoting *Ramseyer*, 90 F.3d at 1523). A whistleblower employee "must make clear [her] intention[ ] of bringing or assisting in an

FCA action in order to overcome the presumption that [she is] merely acting in accordance with [her] employment obligations." *Ramseyer*, 90 F.3d at 1523 n.7.  Defendants make three arguments in support of their contention that Plaintiff's FCA retaliation claim fails: (1) Plaintiff does not allege that she engaged in a protected activity, (2) Plaintiff does not allege that Defendants were on notice of any protected activity by Plaintiff, and (3) Plaintiff fails to allege that the retaliation was a "but-for" cause of her termination.  *Motion* [#16] at 7-14; *Reply* [#23] at 4-11.

Plaintiff's allegations of her own conduct do not rise to a level of activity that is protected by the FCA.  Plaintiff alleges that she had "legitimate concerns that [Defendants were] acting unethically," *Compl.* [#1] ¶ 69, and that "[i]t was clear to Plaintiff that the documents the Company refused to produce, and the information withheld from the [Department of Justice ("DOJ")] were things that would implicate . . . the Company for fraudulent billing and other illegal practices," *id.* ¶ 86.  Based on these and other allegations in the Complaint, it is unclear whether Plaintiff was actually contemplating a private qui tam action or affirmatively helping another private individual or the DOJ with an FCA action when the primary events alleged in this lawsuit occurred.  Moreover, although Plaintiff asserts that she told Defendant Wright's supervisor, Ms. McLean, that he was harassing her "because of the concerns Plaintiff expressed about the Company appearing to be withholding information and documents from the DOJ in the Hanford investigation," notably absent is any allegation that Plaintiff told Ms. McLean that she was assisting in or pursuing an FCA claim herself.  *Id.* ¶ 128.  In other words, Plaintiff complained about her boss to his supervisor, but she does not assert that she engaged in protected conduct under the FCA. The only conduct she explicitly alleges in her statement of the claim is that she "questioned"

her supervisors' "actions in misleading the DOJ," "urged the Company to produce" damaging documents, and "resisted" her supervisor's directive to withhold information from the DOJ. *Compl.* [#1] ¶¶ 153-55). None of this alleged conduct "makes clear her intention of bringing or assisting in an FCA action." *Ramseyer*, 90 F.3d at 1523.

However, the more troubling aspect of Plaintiff's claim relates to the lack of allegations about notice to her employer. Plaintiff vaguely and conclusorily states that she put Defendant Wright "on notice that she was either taking action in furtherance of a private qui tam action or assisting in a False Claims Act action brought by the government." *Id.* ¶ 71. Other non-conclusory allegations of the Complaint do not allow the Court to conclude that Plaintiff has sufficiently alleged notice for purposes of her FCA retaliation claim. In fact, she has merely plead allegations consistent with acting in accordance with her employment obligations as opposed to making clear her alleged intention of bringing or assisting in an FCA action. *See Ramseyer*, 90 F.3d 1523 n.7. For example, she states that she "warned Mr. Wright that the missing documents might show that the Company was committing fraud on the United States," *Compl.* [#1] ¶ 72, that she "expressed her concerns that the Company should be providing more information and documents to the DOJ," *id.* ¶ 76, that she "asked Mr. Wright about conducting additional searches within the Hanford site databases and the storage facility to obtain additional, relevant documents, or to simply to verify that none exist," *id.* ¶ 79, that she "suggested that, if CHG was not going to conduct additional searches itself, the Company, at the very least, must let the DOJ know that the Hanford site databases and the storage facility were likely to contain more relevant documents," *id.*, and that, "[w]hen the DOJ came back around to ask whether the Company provided everything, Plaintiff again suggested ways to locate the information" to Defendant

Wright, *id.* ¶ 84. In fact, her assertion that she suggested that the Company communicate with the DOJ about relevant information contradicts her current attempts to assert that she was assisting in an FCA action herself. Plaintiff has simply not alleged that she even suggested to her employer that she might independently report her concerns of noncompliance to government officials or bring her own qui tam action. *See Ramseyer*, 90 F. 3d at 1523.

Plaintiff has failed to adequately assert that she engaged in conduct protected by the FCA and that she put her employer on notice that she was engaging in such conduct, two critical elements of an FCA retaliation claim. Accordingly, the Court **recommends** that Plaintiff's FCA cause of action be **dismissed with prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990).

**B.  FMLA**

Defendants assert that Plaintiff has not properly alleged any claim under the FMLA. *Motion* [#16] at 19-25; *Reply* [#23] at 13-18. "The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination . . . for a serious health condition." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014) (internal quotation marks omitted). "'This circuit has recognized two theories of recovery under [29 U.S.C.] § 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2).'" *Dalpiaz v. Carbon Cnty., Utah*, __ F.3d __, __, 2014 WL 3686003, at *3 (10th Cir. July 25, 2014) (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006)). "These two theories of recovery are separate and distinct theories that 'require different showings[,]

differ with respect to the burden of proof,' and 'differ with respect to the timing of the adverse action.'" *Dalpiaz*, 2014 WL 3686003, at *3 (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)). Plaintiff asserts both theories of recovery.

### 1. Interference

Plaintiff asserts that Defendant Wright "discouraged" Plaintiff from taking FMLA leave, *Compl.* [#1] ¶ 93, and that he "did not follow the Company's protocols and policies regarding what was supposed to happen when an employee requests FMLA leave." *Id.* ¶ 177. However, aside from her allegations regarding Mr. Wright's purported discouragement of FMLA leave, and assuming that such "discouragement" did not comply with the Company's policies, Plaintiff provides no further illumination regarding how the Company's policies were not followed. The conclusory allegation about failure to follow company policies is insufficient to support an FMLA interference claim, and the Court therefore considers it no further. *See Walker v. Adronics/Elrob Mfg. Corp.*, No. 11-1086-JAR, 2011 WL 6740546, at *5 (D. Kan. Dec. 22, 2011).

"To establish a claim of FMLA interference under § 2615(a)(1), an employee must show '(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights.'" *Dalpiaz*, 2014 WL 3686003, at *3 (quoting *Campbell*, 478 F.3d at 1287). Defendants argue that Plaintiff has not properly alleged any element of an interference claim under the FMLA. *Motion* [#16] at 19-25; *Reply* [#23] at 13-18.

Regarding the first element, Plaintiff must sufficiently allege that she was "an

employee who has been employed (i) for at least twelve months by the employer with respect to whom leave is requested . . . ; and (ii) for at least 1,250 hours of service with such employer during the previous twelve-month period." 29 U.S.C. § 2611(2). Defendants argue that Plaintiff has failed to allege the latter requirement, citing to *Weise v. Eisai, Inc.*, No. 11-cv-00713-WJM-KLM, 2012 WL 84701, at *3 (D. Colo. Jan. 11, 2012). In that case, the plaintiff merely asserted that she had worked for her employer for seven years and that she was a "qualifying employee." *Weise*, 2012 WL 84701, at *1, *3. The District Judge found that "qualifying employee" was a legal conclusion and that there were no factual allegations included in the complaint to satisfy the requirement. *Id.* at *3. Here, Plaintiff has provided much more than a mere legal conclusion. As Plaintiff points out, "she does allege that in the year prior: she was 'Lead Paralegal, Litigation Paralegal, and Litigation Support Manager for the Company'; she was responsible for 'highly sensitive and high risk litigation matters' . . . and 'high-profile criminal investigations and lawsuits'; she was highly occupied with the Hanford investigation; that she had a 'stellar career,' which had 'progressed immensely,' and she received frequent pay raises and promotions." *Response* [#19] at 19 (internal citations omitted) (citing *Compl.* [#1] ¶¶ 3-4, 18-19, 23, 26-69). At this early stage of the lawsuit, Plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Considering that 1,250 hours in a twelve-month period equates to approximately twenty-four hours of work per week and that there are no allegations in the Complaint which cast doubt on the inference that Plaintiff worked more than enough hours to meet the FMLA requirement, the Court finds that Plaintiff has sufficiently alleged this element and has met the *Iqbal* standard here.

-12-

"To satisfy the second element of an interference claim—adverse action interfering with the right to take FMLA leave—'the employee must show that she was prevented from taking the full 12 weeks[ ] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave.'" *Dalpiaz*, 2014 WL 3686003, at *4 (quoting *Campbell*, 478 F.3d at 1287). "Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Dalpiaz*, 2014 WL 3686003, at *3 (citing *Campbell*, 478 F.3d at 1287).

The sole non-conclusory allegation made regarding the interference claim is that Defendant Wright discouraged Plaintiff from taking FMLA leave and encouraged her to "forego" such leave. Compl. [#1] ¶¶ 176-178. Plaintiff argues that *Mardis v. Central Nat'l Bank & Trust of Enid*, 173 F.3d 864, 1999 WL 218903 (10th Cir. Apr. 15, 1999), supports her argument that discouragement may constitute interference in violation of the FMLA. *Response* [#19] at 21-22. Although this is true, *Mardis* does not support her position under the facts of this case. In *Mardis*, the Tenth Circuit Court of Appeals stated:

> Threatening an employee with absolute forfeiture of accrued but unused vacation and sick leave might indeed establish a violation of the FMLA, if it discouraged the employee from applying for FMLA leave. Mere postponement of a scheduled vacation and temporary restriction of use of vacation leave, however, with no ultimate loss of accrued benefits, would likely not constitute actionable discouragement.

*Mardis*, 1999 WL 218903, at *3. Here, Plaintiff has failed to describe with enough specificity how Defendant Wright discouraged Plaintiff from taking FMLA leave. She states that Defendant Wright "did not follow the Company's protocol and policies regarding what should happen when an employee requests FMLA leave," that he "willfully took advantage

-13-

of Plaintiff's situation and duress and stress caused by her mother's severe illness and Plaintiff's own illness," that he "misdirected" her, and that he "encouraged Plaintiff to forego FMLA leave and instead work out of CH2M HILL's Florida office while she cared for her dying mother." *Compl.* [#1] ¶¶ 5, 94-95. Plaintiff has failed to allege any facts asserting that she was actually prevented from taking leave when she requested it, that Defendant Wright did more than suggest an alternative to her use of FMLA leave, or that Defendant Wright otherwise so dictated her decision regarding whether to take FMLA leave that his actions rise to the level of an FMLA interference claim.

Accordingly, the Court **recommends** that Plaintiff's FMLA interference claim be **dismissed with prejudice**. *Reynoldson*, 907 F.2d at 127.

### 2. Retaliation

In contrast to an interference claim under the FMLA, "a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." *Dalpiaz*, 2014 WL 3686003, at *4 n.3 (quoting *Campbell*, 478 F.3d at 1287). The elements of such a claim are: (1) the plaintiff took FMLA-protected leave, thereby engaging in a protected activity, (2) the defendant took a materially adverse action against the plaintiff, and (3) circumstances, such as temporal proximity, permit an inference of causal connection between the two events. *Smothers*, 740 F.3d at 540.

Plaintiff's claim here fails because she has not alleged the first element, i.e., that she actually took leave under the FMLA. In fact, she affirmatively states that she was not

permitted to take FMLA leave. *Compl.* [#1] ¶ 175; *see also Response* [#19] at 21 (conceding that "Plaintiff alleges that she did *not* take any FMLA leave" (emphasis in original)). Therefore, her claim of retaliation under the FMLA fails. Accordingly, it is **recommended** that Plaintiff's claim of retaliation under the FMLA be **dismissed with prejudice**. *Reynoldson*, 907 F.2d at 127.

**C.    State Law Claims**

Plaintiff's remaining claims—IIED and wrongful discharge in violation of public policy—sound in state law. These are claims which "[f]ederal law neither created ... nor is federal law a necessary element of [them]." *Tinner v. Farmers Ins. Co.*, 504 F. App'x 710, 714 (10th Cir. 2012) (citation and quotation omitted). Here, subject matter jurisdiction is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See Compl.* [#1] ¶ 14. As a result, in order to consider the remaining claims, the Court must exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The exercise of supplemental jurisdiction "is within a district court's discretion." *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating that once "the bases for federal subject matter jurisdiction have been extinguished . . . , the district court may decline to exercise continuing pendant or supplemental jurisdiction over plaintiff's state claims"). Thus, having recommended dismissal of Plaintiff's federal claims, the Court further **recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's remaining

state law claims and that such claims be **dismissed without prejudice**.

## IV. Conclusion

Based on the foregoing, the Court respectfully **RECOMMENDS** that Defendants' Motion [#15] be **GRANTED** and that Plaintiff's Complaint [#1] be **DISMISSED with prejudice in part and DISMISSED without prejudice in part**, as outlined above.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  August 22, 2014

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge