**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-03276-MSK-KLM

GRACE RANDAZZO,

     Plaintiff,

v.

CH2M HILL, INC.,
CH2M HILL COMPANIES, LTD.,  and
DUDLEY WRIGHT,

     Defendants.

_____

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING**
**RECOMMENDATION, AND GRANTING MOTION TO DISMISS**
_____

     **THIS MATTER** comes before the Court pursuant to Ms. Randazzo's Objections **(# 50)**

to the Magistrate Judge's August 22, 2014 Recommendation **(# 46)** that the Defendants' Motion

to Dismiss **(# 15)** be granted, and the Defendant's response **(# 52)**.[1]

## FACTS

     According to Ms. Randazzo's Complaint **(# 1)**, she worked as a Paralegal for Defendants

CH2M Hill, Inc. and CH2M Hill Companies, Ltd., under the direct supervision of Defendant

Wright.  Prior to the events at issue here, the Defendant companies were hired by the U.S.

Department of Energy to perform certain professional services the state of Washington.

Subsequently, the United States Department of Justice began investigating allegations that the

---

[1]    Also pending is a "Stipulated Motion to Dismiss" **(# 42)** certain claims by Ms. Randazzo,
immediately followed by a Motion to Strike **(# 43)** that "stipulated" motion due to Ms.
Randazzo's disagreement with its contents.  The parties subsequently filed a stipulation **(# 45)**
addressing the same subject matter as the original stipulated motion.  Accordingly, the Court
denies the "Stipulated Motion" and Motion to Strike as moot.

Defendant companies were overbilling the Department of Energy with regard to the services they were performing.  Ultimately, the Department of Justice indicated its intention to bring suit against the Defendant companies under the Federal Anti-Kickback Act, 41 U.S.C. § 51, and the False Claims Act, 31 U.S.C. § 3729 *et seq.*, among other claims.

In 2010, the Department of Justice served several subpoenas on the Defendant companies, requesting certain records relating to other forms of potential misconduct, including paying overtime wages to employees for hours that were not actually worked.  Mr. Wright was designated by the companies to handle the response to those subpoenas, and he enlisted Ms. Randazzo's assistance.  Ms. Randazzo alleges that she "had difficulty receiving information and records" from the Defendant companies, "leaving her suspect that . . . staff were hiding or destroying potentially damaging records."  Mr. Wright informed Ms. Randazzo that the companies' exposure with regard to these matters potentially ran to the hundreds of millions of dollars.  Ms. Randazzo became concerned that "Mr. Wright may have participated in the deceptive [overtime] practices himself."  She reviewed the documents that the companies planned to submit to the Department of Justice and informed Mr. Wright of circumstances where she believed that responsive documents were missing from the proposed production.

In June 2011, harboring a "legitimate concern that [the companies were] acting unethically," Ms. Randazzo "confronted Mr. Wright about the questionable document production practices."  She "warned Mr. Wright that the missing documents might show that the Company had committed fraud on the United States."  She believes that, by doing so, she "put Mr. Wright on notice that she was either taking action in furtherance of a private *qui tam* action or assisting

in a False Claims Act action brought by the Government."[2]  Mr. Wright admonished her and instructed her not to speak further about the matter or seek to obtain the additional documents she believed were improperly being withheld.  Mr. Wright directed her not to include certain facts in her reports to the Department of Justice, based on what Ms. Randazzo characterizes as "shoddy support" for the companies' position and questionable assertions of fact.

After these events, Ms. Randazzo requested that she be allowed to take time off under the Family and Medical Leave Act ("FMLA") to care for her ailing mother in Florida.  She contends that Mr. Wright "discouraged her from doing so," instead encouraging her to temporarily relocate to the companies' Florida office and work remotely.  Characterizing this as a denial of her request to take FMLA leave, Ms. Randazzo states that Mr. Wright did so to retaliate against her for raising concerns about the truthfulness of the companies' responses to the Department of Justice. Nevertheless, it appears that Ms. Randazzo did indeed temporarily relocate to Florida and continued working.  However, she alleges that Mr. Wright fired, allegedly without cause, an employee who had been assisting Ms. Randazzo, thereby increasing the workload Ms. Randazzo was required to shoulder.

When Ms. Randazzo returned to the Colorado office from Florida in September 2011, Mr. Wright informed her that she would no longer be working on complying with the Department of Justice subpoenas, and he assigned those tasks to a male paralegal who Ms. Randazzo contends lacked adequate qualifications to perform the job.  Mr. Wright chastised the male paralegal for seeking assistance from Ms. Randazzo on the subpoena response project,

---

[2]      The Court understands this allegation to be an argument by Ms. Randazzo about the significance of the various other statements to Mr. Wright about the matter, not a quotation of a specific statement she allegedly made to Mr. Wright.

excluded Ms. Randazzo from projects,  criticized her work without justification, changed her

working hours without notice, and allegedly took various other steps to retaliate against her.

Ms. Randazzo met with Margaret McLean, Mr. Wright's supervisor, to complain about

Mr. Wright's treatment of her, and explained her belief that "the Company appeared to be

withholding information and documents" from the Department of Justice, as well as her belief

that Mr. Randazzo may have been subjected to age and sex discrimination.  Ms. McLean offered

to address the matter with Mr. Wright, but, fearing further retaliation, Ms. Randazzo asked Ms.

McLean to keep the matter confidential.  (Ms. Randazzo believes that Ms. McLean did not

comply with that request.)

In August[3] 2011, Ms. Randazzo met with Ms. McLean again, and Ms. McLean instructed

Ms. Randazzo to talk to the companies' Human Resources Director.  Ultimately, the Human

Resources Director recommended a mediation between Ms. Randazzo and Mr. Wright.  That

mediation was repeatedly re-scheduled, and ultimately never occurred.  Instead, on October 17,

2011, Mr. Wright issued Ms. Randazzo a termination notice, stating that "he did not trust her"

and accusing her of poor performance.  Ms. Randazzo believes that these criticisms were

fabricated as a pretext to retaliate against her for raising her concerns about the companies'

subpoena responses.

Ms. Randazzo's Complaint alleged eight causes of action, all but the last of which are

asserted solely against the companies: (i) retaliation in violation of the False Claims Act, 31

U.S.C. § 3729 *et seq.*; (ii) common-law wrongful discharge in violation of public policy under

Colorado law; (iii) interference with protected rights under the FMLA, 29 U.S.C. § 2615(a)(1);

---

[3]     The Complaint appears to be somewhat imprecise or inconsistent in these time frames, as
this August 2011 meeting seemingly predates Ms. Randazzo's return from Florida in September
2011.

(iv) retaliation in violation of the FMLA, 29 U.S.C. § 2615(a)(2); (v) retaliation in violation of

Title VII, 42 U.S.C. § 2000e; (vi) retaliation in violation of the Age Discrimination In

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (vii) retaliation in violation of the

Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-402; and (viii) common-law

intentional infliction of emotional distress, asserted solely against Mr. Wright.  (The parties

subsequently stipulated **(# 45)** to the dismissal of the Title VII, ADEA, and CADA-based

claims.)

The Defendants moved to dismiss Ms. Randazzo's remaining claims pursuant to Fed. R.

Civ. P. 12(b)(6). **(# 15)**   The Court referred that motion to the Magistrate Judge for a

recommendation, and on August 22, 2014, the Magistrate Judge recommended that the motion

be granted. **(# 46)**   Specifically, the Magistrate Judge found: (i) as to the False Claims Act claim,

Ms. Randazzo fails to adequately allege that she took any act or made any express statement "in

furtherance of a private *qui tam* action or assist[ed] in an FCA action brought by the

government," as is required to be protected conduct under that statute; (ii) as to the FMLA

interference claim, she failed to adequately allege non-conclusory facts showing that Mr. Wright

"discouraged" her from taking FMLA leave; (iii) as to the FMLA retaliation claim, she fails to

allege that she actually took any FMLA leave; and (iv) as to the remaining common-law claims,

that the Court should decline to exercise supplemental jurisdiction over those claims if all federal

claims are dismissed, 28 U.S.C. § 1367(c)(3).

Ms. Randazzo filed timely Objections **(# 50)** to the Recommendation, arguing: (i) as to

the False Claims Act claim, the Magistrate Judge erred in finding that, as a matter of law, Ms.

Randazzo was required to expressly notify her employer that she was contemplating a *qui tam*

suit or assisting with an existing False Claims Act suit, and that current law provides that

conduct is protected under the Act so long as the employer "could have feared being reported to the government," a standard Ms. Randazzo claims she meets; (ii) as to the FMLA interference claim, she contends that she adequately alleged that Mr. Wright's "failure to direct [Ms. Randazzo] to [the companies'] Human Resources Department or to otherwise alert human resources of her inquiry" about taking FMLA leave constitutes the requisite interference, and that Mr. Wright was motivated to interfere with her request to take leave by his desire to "reserve his rights to terminate her upon her return from Florida," an act he could not take if she had chosen to elect to take FMLA leave; and (iii) as to the FMLA retaliation claim, the Magistrate Judge erred in finding that an employee must actually take FMLA leave before he or she can experience retaliation, and that merely her request to take FMLA leave constitutes protected activity.

## ANALYSIS

### A.  Standard of review

Pursuant to Fed. R. Civ. P. 72(b), the Court reviews the objected-to portions of the Recommendation *de novo*.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute.  *Oxendine v.*

*Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941

(10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its

face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To make such an assessment, the Court

first discards those averments in the Complaint that are merely legal conclusions or "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at

1949-50.  The Court takes the remaining, well-pled factual contentions, treats them as true, and

ascertains whether those facts (coupled, of course, with the law establishing the requisite

elements of the claim) support a claim that is "plausible" or whether the claim being asserted is

merely "conceivable" or "possible" under the facts alleged.  *Id.* at 1950-51.  What is required to

reach the level of "plausibility" varies from context to context, but generally, allegations that are

"so general that they encompass a wide swath of conduct, much of it innocent," will not be

sufficient.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B.  False Claims Act**

31 U.S.C. § 3730(h)(1) provides that "any employee" who "is discharged, demoted,

suspended, harassed, or in any other manner discriminated against . . . because of lawful acts

done by the employee in furtherance of an action under this section or other efforts to stop one or

more violations of" the Act may bring suit.  To be protected by this statute, an employee must

put her employer "on notice that [the employee] was either taking action in furtherance of a

private *qui tam* action or assisting in an FCA action brought by the government."  *McBride v.

Peak Wellness Ctr., Inc.*, 688 F.3d 698, 704 (10th Cir. 2012).  Such notice may take a variety of

forms, from "informing the employer of illegal activities that would constitute fraud on the

United States," to "warning the employer of regulatory noncompliance and false reporting of

7

information to a government agency," to "explicitly informing the employer of an FCA violation." *Id.* However, "merely informing the employer of regulatory violations, without more, does not provide sufficient notice." *Id.*

Ms. Randazzo argues that amendments to the False Claims Act in 2009 broadened the scope of whistleblower protections, making it easier for employees to demonstrate protected activity. It is true that until 2009, 31 U.S.C. § 3730(h) required an employee to take action "in furtherance of an action under this section." *See* P.L. 111-21, § 4(d). The 2009 amendment broadened this provision to its current text, providing that activities "in furtherance of an action" or "other efforts to stop . . . violations" could constitute protected activity. Ms. Randazzo cites to post-2009 cases for the proposition that activity is protected if that action is "sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee." *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (5th Cir. 2010).

The Court has some doubt that the 2009 amendments to the False Claims Act materially alter the analysis to be applied here; even if they do, the 10th Circuit's decision in *McBride* is from 2012, long after the amendment had taken effect. Thus, there is no reason to believe that the standard announced in *McBride* is in any way outdated.

This Court does not necessarily read *McBride* as narrowly as the Magistrate Judge has. The Court understands the Magistrate Judge to construe the 10th Circuit to require that Ms. Randazzo affirmatively state to Mr. Wright (or some other corporate representative) her intention to file a *qui tam* suit or some action on her part to join in or assist an actual False Claims Act suit that another person had brought. This is a colorable reading of the first quote from *McBride* set forth above, but *McBride* goes on to identify various actions that it deems would be sufficient to

provide notice to the employer.  For example, it cites with approval *U.S. ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 449 (6th Cir. 2008).  There, a facility nurse became concerned that her employer was underreporting workplace injuries in order to increase the performance-based compensation it received from the government.  The nurse raised concerns about the records' inaccuracies to management, and was suspended as a result.  The 8th Circuit found that complaints about inaccuracies were not protected (rather, they were mere "grumbling"), but noted that, thereafter, the nurse wrote to the employer's management, stating that "she had been placed on administrative leave because she refused to participate in illegal activities," which she later clarified were "under-reporting of work-related injuries and illnesses" allowing the employer to improperly reap "large incentive payments." 525 F.3d at 449.  The 8th Circuit found that this was sufficient to constitute protected activity, even though the nurse never actually threatened to bring a *qui tam* suit of her own or to join in another's.

Thus, the Court understands *McBride* to teach that an employee is not necessarily required to affirmatively threaten to bring a *qui tam* suit of her own or to join in another's suit in order to obtain protection under the False Claims Act; rather, what is required is that the employee identify particular conduct to the employer that could constitute a false claim and clearly inform the employer of her belief that such conduct is both unlawful and a fraud against the United States (as opposed to merely being inconsistent with corporate policy – *i.e.* "regulatory violations" that *McBride* deems insufficient).  In *McBride*, the employee failed to meet that standard because her allegations of financial mismanagement involved "lack of compliance with [the employer's] internal policies, [rather than] an accusation of illegal, let alone fraudulent, conduct."  688 F.3d at 704.

It is not entirely clear whether Ms. Randazzo's allegations are sufficient to meet this test. Much of her Complaint is pled in the form of conclusions: rather than specifically identifying what Mr. Randazzo actually said or did, the Complaint often contains Mr. Randazzo's conclusory characterizations of those words or actions.  For example, Ms. Randazzo states that she "frequently expressed her concerns to Mr. Wright about items that were missing from the production process.  The missing documents could have provided the federal government with reason to prosecute the false claims."  She does not, however, expressly state that she informed Mr. Wright of the latter belief, and it is the act of informing one's employer of the employee's concerns that corporate conduct is both illegal and fraudulent that is necessary to rise to the level of protected activity under *McBride*.  Thus, the Court largely agrees with the Magistrate Judge that Ms. Randazzo's Complaint is insufficient to state a False Claims Act claim.

In any event, however, this Court would also dismiss Ms. Randazzo's False Claims Act claim for another, slightly different reason - Ms. Randazzo never reported any false "claim" to Mr. Wright or Ms. McLean.  The False Claim Act prohibits persons from making a "false or fraudulent claim" on the Government.  31 U.S.C. § 3729(a)(1)(A).  A "claim" is defined as "any request or demand . . .  for money or property . . . to be spent or used on the Government's behalf."  31 U.S.C. § 3729(b)(2)((A).  The Complaint makes clear that Ms. Randazzo's job duties involved responding to a Department of Justice subpoena, and that her complaints to Mr. Wright concerned "questionable document production practices of the Company."  Producing documents in response to a subpoena does not fall within the definition of making a "claim" on the Government, and failing to adequately respond to a subpoena does not involve a "request or demand . . . for money or property" from the Government.  Thus, even if Ms. Randazzo had stated emphatically that she believed that the companies' subpoena responses were flat-out

fraudulent and even illegal, that action would nevertheless not be protected under the False

Claims Act because the allegedly unlawful conduct was not a "claim" on the Government.

Admittedly, the withheld documents may have been germane to an investigation into the

legality of "claims" made by the companies, but Ms. Randazzo does not allege in the Complaint

that she had particular first-hand knowledge of the underlying fraudulent claims themselves – *i.e.*

the unlawful kickbacks or alleged time-card fraud being investigated by the Department of

Justice.  At best, the Complaint simply alleges that Ms. Randazzo was aware that certain

documents responsive to the subpoena existed and were being withheld by the companies, and

that such withheld documents (which, the Complaint appears to imply, Ms. Randazzo knew

existed by never actually saw) "could have provided the federal government with reason to

prosecute the false claims" or "might show that the Company was committing fraud on the

United States."  (Emphasis added.)   At best, then, Ms. Randazzo was not advising her employers

of her concerns about a false "claim" that she was aware of, but rather, was advising them of her

concern that the company was unlawfully concealing evidence that, if disclosed, might establish

a false claim.  Undoubtedly, such concealment of evidence might be unethical or in violation of

some other provision of law, but it does not, of itself, constitute the making of a false "claim."[4]

Thus, Ms. Randazzo's complaints that the companies were not sufficiently responding to the

Department of Justice's subpoena does not constitute Ms. Randazzo reporting her knowledge of

any false claim by the companies, and is not activity protected by the False Claims Act.

---

[4]      Ms. Randazzo might arguably contend that certifying the accuracy of subpoena responses
that she knew to be incomplete (which she refused to do) could constitute "knowingly mak[ing] .
. . a false record or statement material to a false or fraudulent claim," itself an act prohibited by
the False Claims Act.  31 U.S.C. § 3729(a)(1)(B).  But such an argument would be unavailing:
the subpoena responses were not records "material" to the "claim" itself, in the sense that they
assisted in carrying out the false claim.  Rather, a false certification of a subpoena response
would be a record "material" to the Department of Justice's investigation into the false claim,
and thus, at least a full administrative layer removed from the claim itself.

Accordingly, the Court grants the Defendants' Motion to Dismiss Ms. Randazzo's first claim.

### C.  FMLA interference

The FMLA generally provides that eligible employees must be allowed to take a period of unpaid leave to attend to the "serious health condition" of the employee themselves or a close family member.  29 U.S.C. § 2612(a)(1).  The Act provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the Act.  29 U.S.C. § 2615(a)(1).

To plead a claim of prohibited interference under the FMLA, an employee must allege: (i) she was entitled to take FMLA leave; (ii) that some adverse action by the employer interfered with her right to take such leave; and (iii) that the employer's action was related to the exercise or attempted exercise of her FMLA rights.  *Delpiaz v. Carbon County,* ___ F.3d ___, 2014 WL 3686003 (10th Cir. Jul. 25, 2014).  Possible adverse actions may include "[being] prevented from taking the full . . . leave guaranteed by the FMLA, [being] denied reinstatement following leave, or [being] denied initial permission to take leave."  *Id.*  In short, "an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave."  *Id.*

The Magistrate Judge found that Ms. Randazzo failed to allege facts sufficient to plead the necessary element of an adverse action.  Ms. Randazzo alleges that, when she requested the ability to take leave, Mr. Wright "discouraged her from doing so."  She offers no specific factual allegations to support this conclusory statement: she does not, for example, identify the specific statement or conduct by Mr. Wright in response to her request, she merely presents her

conclusion that the statement or conduct was "discourag[ing]."  As noted above, such a conclusory assertion is insufficient under *Iqbal*.

Ms. Randazzo also alleges that Mr. Wright "did not follow the Company's protocol and policies regarding what should happen when an employee requests FMLA leave," but does not elaborate.  In her Objections, she appears to suggest that Mr. Wright was obligated to inform Ms. Randazzo to contact the Human Resources Department for further information.  Even assuming that Mr. Wright did not supply Ms. Randazzo with such instructions, the Court cannot say that a supervisor's failure to direct an employee to the proper person or department to make an FMLA request constitutes an adverse employment action.  To support an FMLA interference claim, an employee must allege that she suffered an employment action that "a reasonable employee would have found materially adverse."  *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).  A reasonable employee seeking information about company FMLA policies or seeking to make a formal request for FMLA leave after having been "discouraged" from doing so by his or her supervisor would logically look to the company's Human Resources Department for such information without needing to be specifically instructed.  Accordingly, the Court finds that Ms. Randazzo has failed to adequately allege a claim for FMLA interference.

### D.  FMLA retaliation

29 U.S.C. § 2615(a)(2) prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful" by the FMLA.  To state a claim for FMLA retaliation, Ms. Randazzo must allege: (i) that she engaged in protected activity under the FMLA; (ii) she suffered an adverse employment action; and (iii) the circumstances permit an inference that the adverse action was motived by her protected activity.  *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014).

The Magistrate Judge found that Ms. Randazzo failed to adequately allege the first element – protected activity – because she never actually took any FMLA leave; rather, she accepted Mr. Wright's suggestion that, in lieu of taking leave, she temporarily transfer to the Florida office and work remotely.  In her Objections, Ms. Randazzo alleges that this was error, and that merely making a request to take FMLA leave can constitute protected activity for purposes of a retaliation claim.  *Citing Wherley v. American Family Mut. Ins. Co.*, 513 Fed.Appx. 733 (table), 2013 WL 1092856 (10th Cir. Mar. 18, 2013).

Acknowledging that the question of "whether an employee must actually have taken FMLA leave as a prerequisite to a retaliation claim" was "unsettled" in the 10th Circuit, the court in *Wherley* ultimately concluded that merely "notifying an employer of the intent to take FMLA leave is protected activity."  *Id.* at 742.  This Court agrees that Ms. Randazzo's request to take FMLA leave in the "summer of 2011" constituted protected activity under the FMLA.  The Court also finds that Ms. Randazzo's allegations that she was subjected to harassment and diminishment of her duties, and was terminated are sufficiently adverse employment actions.

However, the Court finds that Ms. Randazzo has failed to allege facts sufficient to demonstrate an apparent causal connection between her request to take FMLA leave and the adverse actions she suffered.  Notably, Ms. Randazzo points to no particular disparaging comments by Mr. Wright about her request to take FMLA leave, before or after her decision to take a temporary transfer instead, or any other conduct that might permit the inference that the request for leave was the cause of Mr. Wright's hostility.  To the contrary, Ms. Randazzo's allegations make clear that Mr. Wright became hostile towards her as early as June 2011 –

presumably before she ever requested FMLA leave[5] – because she challenged the sufficiency of the companies' subpoena responses.  The Complaint repeatedly states as much: "Mr. Wright began his calculated campaign of emotional abuse, retaliation, and discrimination in or around June 2011, and soon after Plaintiff submitted her draft response to the DOJ to Mr. Wright for his approval," *Docket* # 1, ¶ 89; "Mr. Wright never criticized Plaintiff's work until, after acting in furtherance of a potential federal False Claims Act case, she expressed concerns about [the companies'] withholding documents from the DOJ," *Docket* # 1, ¶ 124; "[a]s Plaintiff reviewed the false termination letter, she noted that all the alleged deficiencies arose in line with her resistance to Mr. Wright's directed to stonewall the DOJ . . .," *Docket* # 1, ¶ 148.  Clearly, Ms. Randazzo herself believes that her opposition to the subpoena responses, not her FMLA request, as the cause of Mr. Wright's hostile treatment.[6]

Admittedly, this action is merely at the pleading stage and the burden on Ms. Randazzo to establish a *prima facie* case of retaliation is not onerous, and the causal element often proven through mere temporal proximity alone at this stage.  *Wherley*, 513 Fed.Appx. at 743.  But the

---

[5]     Ms. Randazzo's Complaint states that "during this same time-frame" as Mr. Wright "beginning his calculated campaign" against her, both she and her mother were suffering from serious health conditions.  *Docket* # 1, ¶. 90.  She later alleges that she made a formal request for FMLA leave "in the summer of 2001."  It is not clear whether Ms. Randazzo is contending that the date she made the request for leave actually precedes the beginning of Mr. Wright's "calculated campaign" of hostility, but even if she does, as noted above, the remainder of the Complaint refutes any notion that the request for FMLA leave was the cause of Mr. Wright's hostility.

[6]     Ms. Randazzo's Complaint posits that Mr. Wright reacted negatively to Ms. Randazzo's request to take FMLA leave precisely because Mr. Wright knew that her taking such leave (or, arguably, even requesting it) would grant Ms. Randazzo additional legal protections that would make it difficult for him to terminate her.  She states that "Mr. Wright interfered with the Plaintiff's right to take FMLA leave because he was angered that she had refused to lie to the DOJ.  Mr. Wright wanted to be free to terminate Plaintiff when she returned from Florida," *Docket* # 1, ¶ 96.  Once again, however, this allegation indicates that Mr. Wright was <u>already</u> intending to terminate Ms. Randazzo when she requested to take FMLA leave, and thus, her request to take FMLA leave could not have caused his hostility.

Complaint both suggests that the pattern of adverse actions she complains of began <u>before</u> her protected FMLA conduct, and offers Ms. Randazzo's own opinion that that pattern was motivated by an entirely different act on her part. *See e.g. Kenfield v. Colo. Dept. of Public Heatlh & Environment*, 557 Fed.Appx. 728, 733 (10th Cir. 2014) ("By its very nature, retaliatory conduct must come *after* the protected activity") (emphasis in original). In such circumstances, the Court cannot say that Ms. Randazzo had alleged facts sufficient to permit the inference that it was her FMLA request that motivated Mr. Wright's hostility, and thus, her FMLA retaliation claim must be dismissed.

### D. State law claims and remaining matters

Ms. Randazzo essentially concedes that, if all of her claims arising under federal law are dismissed, the Court should dismiss her remaining state law claims for lack of subject-matter jurisdiction as the Magistrate Judge recommended.

Ms. Randazzo argues in her Objections that she should be granted leave to amend her Complaint to cure some or all of the pleading defects identified by the Magistrate Judge. Although the Court acknowledges that leave to amend a pleading should be freely given, the Court declines to grant such leave automatically. Given the heavily-conclusory nature of Ms. Randazzo's current Complaint and her failure to tender a proposed Amended Complaint or representation of facts that could be included in an Amended Complaint, the Court is not sanguine that Ms. Randazzo can cure the defects noted herein. Accordingly, the Court will grant the Defendants' Motion to Dismiss; should Ms. Randazzo believe that she can tender an amended pleading that could survive a Rule 12(b)(6) motion, she may move for such relief within the next 14 days. At such time, she may also seek relief from the dismissal and closure of this action.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court **OVERRULES** Ms. Randazzo's Objections **(# 50)** and **ADOPTS** the Recommendation **(# 46)** on the grounds set forth herein.  The Defendants' Motion to Dismiss **(# 15)** is **GRANTED**, and Ms. Randazzo's claims are **DISMISSED** in their entirety.  The Clerk of the Court shall close this case.

Dated this 22nd day of September, 2014.

**BY THE COURT:**

*Marcia S. Krieger*
_____

**Marcia S. Krieger**
**Chief United States District Judge**